IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOSE A. HERRERA,                    §
                                    §
            Plaintiff,              §
                                    §
VS.                                 §   CIVIL ACTION H-13-68
                                    §
WELLS FARGO BANK, N.A.,             §
                                    §
            Defendant.              §

## OPINION AND ORDER

Pending before the Court in the above referenced cause, removed from state court, seeking to stop foreclosure, and challenging Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo's") standing to hold a public auction of *pro se* Plaintiff Jose A. Herrera's home at 10018 Victoria Falls Lane, Houston, Texas 77075,[1] are the following motions: (1) Plaintiff's motion to order a permanent injunction barring sale (instrument #6); (2) Wells Fargo's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 8 and 12 (#7); (3) Plaintiff's motion for default judgment (#12); and (4) Plaintiff's motion for summary judgment (#13).

Because Wells Fargo has filed a timely responsive pleading in its motion to dismiss, as a matter of law Plaintiff is not entitled to a default judgment under Federal Rule of Civil Procedure 55(a)

---

[1] On inquiry from the Court's staff, Wells Fargo Bank, N.A.'s counsel informed the Court that the public auction of Plaintiff's property has been reset from February 6, 2013 to March 5, 2013.

so the Court denies #12.

Because the Court concludes that the motion to dismiss impacts the remaining two motions, it addresses that document and responsive briefs.

### Standard of Review under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed.

2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").  *Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974).  "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).  Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'"  *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 129 S. Ct. at 1940, the Supreme Court,

opined that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949.   The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal.   *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

On a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine  the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record.   *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994).   *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken"). Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not

transform the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960 (2002), *cited for that proposition in Baisden v. I'm Ready Productions*, No. Civ. A. H-08-0451, 2008 WL 2118170, *2 (S.D. Tex. May 16, 2008). *See also ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 57 (S.D. Tex. 2007)("Dismissal "'can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" [citation omitted]), *reconsidered in other part*, 396 B.R. 278 (S.D. Tex. 2008).

While the sufficiency of a complaint under Rule 8(a)(2) may be challenged by motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, even if the defendant does not file such a motion, the court "has the authority to consider the sufficiency of a complaint on its own initiative." *Landavazo v.*

*Toro Co.*, 301 Fed. Appx. 333, 336 (5th Cir. Dec. 5, 2008)(*citing Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006)("As a general rule, a district court may dismiss a complaint on its own for failure to state a claim."), *cert. denied*, 129 S. Ct. 2417 (2009).

The district court is to construe liberally the briefs of *pro se* litigants and apply less stringent standards to them than to parties represented by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(reciting the long-established rule that documents filed pro se are to be liberally construed and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). Nevertheless, "[e]ven a liberally construed pro se civil rights complaint . . . must set forth facts giving rise to a claim on which relief can be granted." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). "*[P]ro se* parties still must brief the issues and reasonably comply with the standards of Rule 28." *Flores v. Select energy Services LLC*, 486 Fed. Appx. 429, 431 n.2 (5th Cir. Aug. 16, 2012), *citing Grant v. Cueller*, 486 Fed. Appx. at 524.

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter &*

*Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]").   The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ."   6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).   Denial of leave to amend is appropriate if the proposed amendment would be futile because as a matter of law it could not survive a motion to dismiss.   *See, e.g., Rio Grand Royalty Co. v. Energy Transfer Partners, LP*, 620 F.3d 465, 468 (5th Cir. 2010), *citing Briggs v. Mississippi*, 331 F.3d 499 (5th Cir. 2003).

### Plaintiff's Allegations

Plaintiff's Verified Complaint (#1, Ex. B.2), styled a "Quiet Title Action," is somewhat difficult to understand, but the Court, with substantial aid from copies of the key documents filed among the removal papers under #1 and uncontested by Wells Fargo, has

done its best to identify Plaintiff's claims.

Plaintiff states that he and Patricia Vargas are the legal title owners of the property in dispute and that Wells Fargo is the current servicer of their mortgage loan. He represents that he has "reason to believe that the Defendant is not the real party of interest for the loan he originally made" with Security National Mortgage Company, the original lender and according to Plaintiff the real party in interest. Therefore Plaintiff contends that Wells Fargo cannot enforce the Promissory Note securing his mortgage, i.e., foreclose on and sell at auction his property.

Plaintiff states that he sought clarification of Wells Fargo's status, but Defendant failed to respond to requests for information to verify its claim with proof, required under the Real Estate Settlement Procedures Act ("RESPA"),[2] other than to provide photocopies of the Deed of Trust[3] and the Promissory Note, which failed to link the original lender to Wells Fargo. Despite repeated requests from Herrera, Wells Fargo continues to proceed with the sale of Plaintiff's home.

According to Plaintiff's Verified Complaint (and his motion to order permanent injunction (#6)), on October 11, 2011 he sent a first qualified written request ("QWR") under the Federal Servicer

---

[2] 12 U.S.C. § 2602, *et seq.*

[3] A copy of the Deed of Trust at issue is found in the removal papers, #1, Ex. 2

Act, which is part of RESPA, 12 U.S.C. § 2605(e),[4] asking for thirty-five items and admonishing that should Defendant fail to produce proof of claim within twenty days, it would have exhausted

---

[4] RESPA mandates that a loan servicer must respond by set deadlines to a QWR from a borrower. 12 U.S.C. § 2605(e). A QWR is "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer" that identifies or provides information that makes identifiable by the servicer the name and account at issue and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the service regarding other information sought by the borrower." 12 U.S.C. § 2606(e)(1)(B). The QWR must relate to the servicing of the loan. 12 U.S.C. § 2605(e)(1). "Servicing" includes "any scheduled periodic payments from a borrower" or the "making of . . . payments of principal and interest." 12 U.S.C. § 2605(i). Within sixty days of receiving a QWR, the loan servicer must (a) make appropriate corrections in the borrower's account; (b) provide the borrower with a written explanation of why the account is correct and who the borrower may contact for further assistance; or (c) provide the borrower with the information requested, or a written explanation of why the information is unavailable or cannot be obtained by the servicer and whom the borrower may contact for further assistance. 12 U.S.C. § 2605(e)(2)(A)-(C); *see, e.g., Castrillo v. American Home Mortg, Servicing, Inc.*, 2010 WL 1424398, *7 (E.D. La. Apr. 5, 2010). To recover for a claim under RESPA, the borrower must show actual damages resulted from the violation of the statute to pursue a private cause of action under it. 12 U.S.C. § 2605(f). Section 2605, in addition, requires that the borrower be informed when a loan is transferred from one servicer to another. 12 U.S.C. §2605(i). *See, e.g., Akintunji v. Chase Home Finance, LLC*, Civ. A. No. H-11-389, 2011 WL 2470709, *2 (S.D. Tex. June 20, 2011); *Gibson v. Federal Home Loan Mortg. Corp.*, Civ. A. No. H-12-0662, 2011 WL 1898886, *2 (S.D. Tex. May 23, 2012); *Oden v. JPMorgan Chase Bank, N.A.*, Civ. A. No. H-12-0861, 2012 WL 1610782, *2 (S.D. Tex, May 8, 2012); *VanHauen v. American Home Mortgage Servicing, Inc.*, No. 4:11-CV-461, 2012 WL 874330, *7 (E.D. Tex. Feb. 17, 2012), *report and recommendation adopted*, 2012 WL 874328 (E.D. Tex. Mar. 14, 2012). Alternatively, if the plaintiff shows there is a "pattern or practice of noncompliance" by the servicer, he may recover statutory damages of up to $1,000 under § 2605(f).

administrative remedies to provide proof of claim.[5]   After
receiving a QWR, a servicer must acknowledge its receipt within 20
days and respond to inquiries within 60 days.   12 U.S.C. §
2605(e)(1)(A) and § 2605(e)(2).[6]   In response Defendant provided
only a photocopy of the Deed of Trust, which failed to link the
original lender to Wells Fargo.   On April 25, 2012 Plaintiff sent
a Production of Document letter titled Good Faith Discovery Notice:
Verification of Proof of Claim Requested (copy included in removal
papers) via UPS priority mail asking for, among other things, the
original note with his original wet-ink signature to establish
proof of claim[7] and demanded that Defendant show all endorsements

---

[5] A copy of this October 11, 2011 QWR is included among the
removal papers.   The Court finds that it qualifies as a QWR under
§ 2606.

[6] In July of 2010, Congress amended RESPA to lessen the time
period under § 2605(e)(1)(A) from twenty days to five days, and the
time period under § 2605(e)(2), from sixty days to thirty days.
Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L.
No. 111-203, § 1463(c)(2010).   The amendments do not become
effective until "eighteen months after the designated transfer
date" of July 21, 2011.   *Id.;* Designated Transfer Date, 75 Fed.
Reg. 57,252 (Sept. 10, 2010).

[7] In his submission to the Bankruptcy Court, Declaratory
Judgment of Verification of Debt, copy under #1, Herrera states,

A Promissory Note, like a check[,] is a one of a kind
negotiable instrument.   One can not take a photocopy of
a check to a bank to cash it.   It is for this reason that
the original wet ink signature promissory note is a
critical piece of material evidence to establish whether
or not the Defendant is a Holder in Due Course (as
governed under the Uniform Commercial Code, and if not,
who is?

and assignments on the Original Note and Deed of Trust since Plaintiff could not find them at the county records. Herrera claims that his securitization audit (#1, Ex. 1) of the original loan showed that Defendant failed to make these filings with proper endorsements and assignments as required by law and that the Promissory Note associated with the Deed of Trust was securitized into Wells Fargo's Mortgage-Backed Securities 2006-12 Trust.[8]

---

[8] The Court would point out that Herrera misrepresents the content of the audit. Because copies of the note and deed of trust were not presented to the auditor, it had no access to them. Moreover the audit's statements are conclusory and fail to meet the requirements of Rule 12(b)(6). For example, on Exhibit 1, pp. 14 and 18, the audit states,

> 2. The Promissory Note should have been endorsed by Security National Mortgage Co., the originating lender to Wells Fargo Bank, NA, the sponsor, and thence to Wells Fargo Asset Securities Corp., the depositor. The depositor should have endorsed the note to HSBC Bank, USA, NA, the trustee.

> 3. The Deed of Trust should have been assigned by the originating lender to the sponsor, the sponsor to the depositor, and the depositor to the trustee.

> **Whether or not these endorsements and assignments were properly executed as of September 29, 2006 can only be determined upon actual examination of the mentioned documents [emphasis added by the Court].**

Again, on page 17 under "The Examiner's Closing statement, it recites, "Whether or not the Promissory Note bears the proper endorsements, and the Deed of Trust, the proper assignments can only be determined upon actual inspection of these documents."
  The audit also makes incorrect conclusory statements about the relevant Texas law, e.g., on p. 17 about separation of the Note and Deed of Trust invalidating the authority to foreclose. *See discussion infra*. *See also Avila v. MERS*, 2012 WL 6055298, *3 (S.D. Tex. Dec. 5, 2012)(finding the Property Securitization Analysis Report to be filled with unsworn conclusory allegations

Because the Note and the Deed of Trust were separated, Plaintiff argues that Wells Fargo has no basis to foreclose on his property. He further alleges that the Promissory Note and Deed of Trust might have been separated when the Mortgage Electronic Registration Systems, Inc. ("MERS")[9] was named as the beneficiary by the original lender.  On September 12, 2012 Plaintiff sent Defendant a third Request for Production of Document (copy included in removal papers), requesting a proof of claim titled Objection to Proof of Claim of Wells Fargo Bank, N.A., and also filed it in the Bankruptcy Court, Case No. 12-36427.  Again he received in response only a photocopy of the Note and Deed of Trust, unaccompanied by

_____

not entitled to the assumption of truth under Rule 12(b)(6), written by an unnamed person of unknown qualifications).

[9] In *Kazmi v. BAC Home Loans Servicing, L.P.*, No. 4:11-CV-375, 2012 WL 629440, *6 (E.D. Tex. Feb. 3, 2012), *citing In re: Mortgage Electronic Registration Systems (MERS) Litig.*, 659 F. Supp. 2d 1368 (U.S. Jud. Pan. Mult. Lit. 2009), the district court explains that MERS is

> an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans.  The system is designed to track transfers and avoid recording and other transfer fees that are otherwise associated with the sale.  MERS is defined in Texas Property Code § 51.0001(1) as a "book entry system," which means a "national book system for registering a beneficial interest in security instrument and its successors and assigns."

Furthermore, "'[u]nder Texas law, where a deed of trust . . . expressly provides for MERS to have the power of sale, then MERS has the power of sale.'"  *Id., quoting Athey v. MERS*, 314 S.W. 3d 161, 165-66 (Tex. App.--Eastland 2010).

evidence that Wells Fargo has authority to sell the property.  On October 11, 2012 he recorded a Declaratory Judgment of Verification of Debt, also filed in the Bankruptcy Court.[10]  That document presented three "statements of fact":  (1) Defendant and MERS bifurcated the Deed of Trust from the Note, thereby immediately making the Deed of Trust null and void and discharging the debt under the Note; (2) Defendant and MERS failed to follow Texas Local Government Code § 192.007(a) and (b)[11]; and (3) in securitizing the Note and trading the original loan, Wells Fargo failed to comply with PSA[12] rules Section 2.01 and 2.01(B), UCC § 1-302,[13] Truth in

---

[10] Plaintiff states that at a hearing on November 2012, Defendant's attorney asked the bankruptcy judge to dismiss the case for improper service and lack of federal jurisdiction, and that Judge Bohm dismissed the case and ordered Plaintiff and Defendant to pursue their dispute in state court.

[11] Section 192.007, addressing instruments to be recorded by Counties, is entitled "Records of Release and Other Actions and provides,

> (a) To release, transfer, assign or take another action relating to an instrument that is filed, registered, or recorded in the office of the county clerk, a person must file, register, or record another instrument relating to the action in the same manner as th original instrument was required to be filed, registered, or record.

> (b) An entry, including a marginal entry, may not be made on a previously made record or index to indicate the new action.

[12] "PSA" stands for the Pooling and Service Agreement" that governs the pool containing the securitized mortgage loans in Wells Fargo's Mortgage-Backed Securities 2006-12 Trust.

[13] This Court notes that "'[b]ecause a Deed of Trust places a lien on *real* property, it is not governed by the UCC.'" *Richardson*

Lending Act ("TILA") and RESPA.  Plaintiff charges that Defendant refused to answer the information requests or provide any valid proof of claim, yet seeks to proceed with the Trustee sale on February 5, 2012.

Plaintiff further complains that Wells Fargo is attempting to collect a debt that is in dispute in violation of the Fair Debt Collection Practices Act ("FDCPA").  He seeks to compel Wells Fargo to prove, verify, and validate that it has standing to enforce the debt.  Herrera further claims that Wells Fargo is allegedly also violating Texas debt collection laws by knowingly using the services of a debt collector, Barrett Daffin Frappier & Engle, LLP, which has repeatedly engaged in illegal practices.

He also seeks to quiet title to the property and asks the Court to "order all parties with legal claim to stipulate and provide proof of claim against the above Deed of Trust, else release their claim."

Moreover Plaintiff contends that his promissory note is securitized into a Real Estate Mortgage Investment Conduit

---

*v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 812 (N.D. Tex. 2012), *quoting Vogel v. Travelers Indem. Co.*, 966 S.W. 2d 748, 753 (Tex. App.–San Antonio 1998, no pet.), and Tex. Bus. & Comm. Code § 3.104, Cmt. 2 (Article 3 is not meant to apply to contracts for . . . the sale or release of real property or similar writings that may contain a promise to pay money."  Other courts agree.  *See, e.g., In re Jacobsen*, Bkrtcy. No. 07-41092, 2012 WL 4033237, *3 n.5 (Bkrtcy. E.D. Tex. 2012). Thus this part of Herrera's  complaint fails to state a plausible claim.

("REMIC")[14] and therefore the beneficial interest holders of the note are the individual shareholders of the REMIC.  There is no evidence that Wells Fargo is entitled to enforce the Note, and therefore to effect the foreclosure of his property.  He maintains that the Deed of Trust must follow the Promissory Note and cannot be split from it.  He contends that once securitized, a loan is permanently converted into a stock.  He claims that his Note is registered in the SEC database as a permanent fixture to the REMIC. In the event of a default, the REMIC (and therefore the individual shareholders) writes off the debt and receives a tax credit for the write off, and thus the debt is discharged.  Plaintiff asserts that the debt has been discharged in full.

In addition Plaintiff observes that the Deed of Trust in Addendum II states, "This Deed of Trust Secures a Promissory Note." He argues that since the Promissory Note is not enforceable by any one party, the Deed of Trust is invalid.  Furthermore, since the

---

[14] Wickipedia states,

REMICs are investment vehicles that hold commercial and residential mortgages in trust and issue securities representing an undivided interest in these mortgages. A REMIC assembles mortgages into pools and issues pass-through certificates, multiclass bonds similar to a collateralized mortgage obligation (CMO), or other securities to investors in the secondary mortgage market. Mortgage-backed securities issued through a REMIC can be debt financings of the issuer or a sale of assets.  Legal form is irrelevant to REMICs:  trusts, corporations, and partnerships may all elect to have REMIC status, and even pools of assets that are not legal entities may qualify as REMICS.

debt has been discharged, the Deed of Trust "is doubly invalid."

Plaintiff further charges that MERS, which does not own the Note, was improperly used to appoint a substitute trustee.  He asserts that the Deed of Trust allows only the original lender to do so.

In sum, Herrera argues that Wells Fargo must show that it is the real and beneficial party of interest with the authority to foreclose on the property or to enforce the Promissory Note and it must show that there is a clear and unbroken chain of title for both the Deed of Trust and the Promissory Note.  He contends that Wells Fargo failed to follow federal and state laws in giving proper notice to Plaintiff for the assignment of the Deed of Trust. Because there is no clear chain of title for the Promissory Note linking the original lender to Wells Fargo, Wells Fargo cannot legally claim to be the real and beneficial party of interest. Because Wells Fargo has not presented any valid proof of a lawful claim to the property and because it threatens to take possession of the property through a trustee sale under the color of official rights, Plaintiff further insists that Wells Fargo is liable for extortion.[15]

### Wells Fargo's Motion to Dismiss (#7)

Wells Fargo states that after Plaintiff failed repeatedly to

---

[15] Plaintiff cites no authority for his assertion, and as a conclusory allegation it is not entitled to a presumption of truth under Rule 12(b)(6).

meet his mortgage obligations, Wells Fargo properly set the property for foreclosure sale on January 1, 2012.  In arguing that the deed of Trust should be declared null and void and the promissory note fully discharged, Plaintiff appears to be asserting a "splitting the note" theory, i.e., that securitization[16] of a mortgage and  "splitting the note" invalidated the mortgage. Noting the lack of clarity in the Verified Complaint, Wells Fargo identifies the following as possible causes of action put forth by Plaintiff:  (1) suit to quiet title; (2), violations of TILA, violations of FDCPA, and violations of RESPA.

Plaintiff does not dispute that he defaulted on payments on his mortgage.  Wells Fargo contends that Plaintiff seeks to prevent foreclosure on his property by manufacturing a claim that is obviously inconsistent with the Note, the Deed of Trust, and the law.  Wells Fargo asserts the following reasons for dismissal of this suit:  (1) Herrera failed to satisfy Rule 8 because his complaint is "long, rambling, and fails to give notice of the claims being brought against Wells Fargo"; (2) Texas courts have rejected the "splitting the note" theory, instead finding that borrowers do not have standing to challenge assignments of the promissory note and that MERS has the authority to transfer the

---

[16] "'Securitization' refers to the 'process of pooling loans and selling them to investors on the open market.'"  *Summers v. PennyMac Corp.*, Civ. A. No. 3:12-CV-01235-L, 2012 WL 5944943 at *6 (N.D. Tex. Nov. 28, 2012), *quoting Commonwelath Prop. Advocates, LLC v. MERS*, 680 F.3d 1194, 1197 n.2 (10th Cir. 2011).

note and deed of trust; (3) Herrera has not made a claim to title, but has improperly filed this action to stop the foreclosure sale; (4) the one-year statute of limitations for TILA[17] claims running from the formation of the contractual relationship between the lender and the borrower is consummated, i.e., when the loan documents are executed,[18] bars Herrera's claims under the statute; (5) under the FDCPA a mortgage service is not a "debt collector" and foreclosure is not a debt collection activity, thus barring Herrera's claims under the statute; and (6) a mortgage company does not have to provide the original deed of trust and not in response to an alleged Qualified Written Request, so Herrera's claim should be dismissed.

## Court's Decision

Wells Fargo maintains that Herrera's conclusory allegations that the Deed of Trust should be declared null and void and the promissory note is fully discharged are not entitled to a presumption of truth.  The Court agrees the pleading is inadequate under Federal Rules and Fifth Circuit case law.  Because a Rule 8 deficiency may be cured by granting leave to amend, the Court initially does not address dismissal simply on that basis.  Moreover it notes that the Verified Complaint was filed in Texas

---

[17] 15 U.S.C. § 1640(e)(requiring that TILA claims be brought within one year of the loan transaction).

[18] *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986).

state court under Texas Rules with less stringent pleading standards than the Federal Rules of Civil Procedure.  Instead the Court first determines whether Plaintiff as a matter of law can assert the claims that he has put forth in his Verified Complaint. If he cannot, granting leave to amend would be futile.

As a threshold matter, the Court holds that Herrera fails to state a cause of action for wrongful foreclosure and cannot currently do so.  A plaintiff asserting wrongful foreclosure must show (1) a defect in the foreclosure sale proceedings, (2) a grossly inadequate selling price, and (3) a causal connection between the defect and the grossly inadequate selling price. *Sauceda v. GMAC Mortgage Corp.*, 268 S.W. 3d 135, 139 (Tex. App.-- Corpus Christi 2008, no pet.), *citing Charter Nat'l Bank-Houston v. Stevens*, 781 S.W. 2d 368, 371 (Tex. App.--Houston [14th Dist.] 1989, writ denied).  Moreover there must be evidence of an irregularity that "must have caused or contributed to cause the property to be sold for a grossly inadequate price."  *In re Keener*, 268 B.R. 912, 921 (N.D. Tex. 2001).  "Under Texas law a grossly inadequate price would have to be 'consideration so far short of the real value of the property as to shock a correct mind, and thereby raise a presumption that fraud attended the purchase.'"  *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-CV-359-A, 2012 WL 2511169, *9 (N.D. Tex. June 29, 2012), *citing FDIC v. Blanton*, 918 F.2d 524, 531 (5th Cir. 1990), *quoting Richardson v. Kent*, 47 S.W. 2d 420, 425

(Tex. Civ. App.--Dallas 1932, no writ)("The weight of Texas authority rejects a determination of gross inadequacy where . . . property sells for over 60% of fair market value."). An attempted foreclosure claim is not cognizable under Texas law. *Motten v. Chase Home Finance*, 831 F. Supp. 2d 988, 1007 (S.D. 2011). Because Plaintiff's house had not yet been sold, he cannot show a grossly inadequate selling price or a causal connection between a defect and the grossly inadequate selling price. If his house is or has been sold at public auction, he might have a wrongful foreclosure claim, so the Court dismisses it without prejudice to repleading if appropriate.

Second, the Court agrees with Wells Fargo that as a matter of law Plaintiff has no claims under the FDCPA against Wells Fargo as a mortgage servicer. The Fifth Circuit has clearly held that "mortgage lenders are not 'debt collectors' within the meaning of the FDCPA." *Montgomery v. Wells Fargo Bank, N.A.*, 459 Fed. Appx. 424, 428 (5th Cir, 2012), citing *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007), *aff'd,* 269 Fed. Appx. 523 (5th Cir. 2008). Nor are mortgage servicing companies "debt collectors" within the meaning of the statute. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985). Moreover, should there be any question about the analogous Texas statute, the Court notes that the Texas Debt Collection Practices Act "tracks the definition of a 'debt collector'" in the federal statute and

does not include a mortgage servicing company. *Kiper v. BAC Home Loans Servicing, LP*, Nos. H-11-3008, H-11-3363, 2012 WL 3185,968, *9 (S.D. Tex. Aug. 2, 2012); *Prendes v. Select Portfolio Servicing, Inc.*, 2012 WL 6913511, *7 (N.D. Tex. Dec. 28, 2012)("The Texas statute's definition of debt collector 'tracks the definition of a 'debt collector in the Federal Debt Collection Practices Act, which does not include a consumer's creditors or mortgage servicing company.'")(*citing Kiper*).  Because it is undisputed that Wells Fargo is Herrera's mortgage servicer, the Court dismisses his FDCPA (and potential TDCPA) claim.

Third, Wells Fargo is correct that under Texas law, bifurcation of the Note and the Deed of Trust does not nullify these instruments.  In *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616 , 622 (N.D. Tex. 2011), the court explained,

> [a] mortgage created by a deed of trust is an interest created by a written instrument providing security for payment.  The security is established by a note.  *See Teas*[, 460 S.W.2d at 243].  Because the deed of trust or mortgage has no legal effect aside from the debt or obligation, any transfer of the deed of trust without the note automatically passes the debt.  Indeed, the note provides that its protections to the lender are enforced through the deed of trust. . . .

The court in *DeFranceschi* summarized, "[A] transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions." *Id.* at 623.  Courts in the Fifth Circuit have roundly rejected the argument that splitting the deed of trust from

the note resulted in a lack of authority of Wells Fargo to
foreclose on the property, in other words a defective attempted
foreclosure.  *In accord Willeford v. Wells Fargo Bank, N.A.*, Civ.
A. No. 3:12-CV-0448-B, 2012 WL 2864499, *3 (N.D. Tex. July 12,
2012); *McDonald v. Deutsche Bank Nat. Trust Co.*, Civ. A. No. 3:11-
CV-2691-B, 2012 WL 2122168, *3 (N.D. Tex. June 11, 2012); *Malikyar
v. BAC Home Loans Servicing, LP*, No. 4:11-CV-417, 2011 WL 5837262,
*5 (E.D. Tex. Oct. 28, 2011).

Plaintiff seeks the promissory note with the wet-ink
signature, arguing only that the holder of it has the lawful power
to initiate a nonjudicial foreclosure, a view known as the "show-
me-the-note" theory.[19]  Texas Property Code allows a mortgagee or

---

[19] In *Puig v. Citibank*, Civ. A. No. 3:11-CV-0270-L, 2012 WL
1835721, *5 (N.D. Tex. May 21, 2012), the Honorable Sam A. Lindsay
explains the show-me-the-note theory fails because Texas law
differentiates between enforcement of a promissory note and
foreclosure:

"Foreclosure enforces the deed of trust, not the
underlying note, and is an independent action against the
collateral and may be conducted without judicial
supervision.  In contrast, enforcement of the note is a
personal action and requires a judicial proceeding."
*Millet v. JP Morgan Chase, N.A.*, 2012 WL 1029497, *2
(W.D. April 26, 2011) . . . .  "Thus the right to recover
a personal judgment for a debt secured by a lien on land
and the right to have a foreclosure of lien are
*severable*."  *Id.* at *3 (citing *Claud v. Gray*, 81 S.W. 2d
647 (1935)(emphasis added).  "In cases where a note
holder seeks a judgment against the borrower, the holder
must typically demonstrate that it is the holder of the
note by producing the original wetink instrument.
Requiring the note holder to prove possession of the
*original* note prevents multiple entities from attempting
to collect on it."  *Id.* (citations omitted).  "In

-22-

mortgage servicer to administer a deed of trust or contract lien foreclosure without production of the original note. *Summers v. PennyMac*, 2012 WL 5944943, at *5; *Puig v. Citibank*, Civ. A. No. 3:11-CV-0270-L, 2012 WL 1835721, *5 (N.D. Tex. May 21, 2012), *citing Crear v. JP Morgan Chase Bank, N.A.*, No. 10-10875, 2011 WL 1129574, at *1 n.1 (5th Cir. Mar. 28, 2011), and Tex. Prop. Code §§ 51.002 and 51.0025.   Herrera concedes that Wells Fargo is the mortgage servicer, and thus it qualifies as a mortgagee under Texas Property Code Ann. § 51.0001(4)(A)(C)(defining "mortgagee" as the "grantee, beneficiary, owner, or holder of a security interest" or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." Thus production of the note is not a prerequisite to Wells Fargo's foreclosing on Herrera's property.

Nor can Herrera as a mortgage borrower contest assignment of the Note and Deed of Trust from the original lender to another.

---

contrast, courts have held that the Texas Property Code does not require a mortgagee in a non judicial foreclosure action to produce the original note as a prerequisite to foreclosure." *Id.* (citing *Wells v. BAC Home Loans Servicing LP*, 2011 WL 2163987).  ["]Courts have noted that Section 51.002 of the [Texas Property] Code, which lays out the steps that must be taken in order to foreclose on property, does not include a provision requiring a mortgagee to produce the original promissory note." *Id.* (citations omitted).

Because Plaintiff is not a party to the assignment of the Note and Deed of Trust, he lacks standing to contest the assignment.  To establish standing, a plaintiff must assert his own legal rights and interest and cannot rely on the legal right and interest of a third party.  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  An assignment is a contract between assignor and subsequent assignee.  *D Design Holdings, LP v. MMO Corp.*, 339 S.W. 3d 195, 200-01 (Tex. App.--Dallas 2011).  In Texas, mortgage borrowers have no standing to contest an assignment from lender to lender because the borrower is not a party to those agreements.  *See, e.g., McAllister v. BAC Home Lonas Servicing, LP*, No. 4:10-CV-504, 2011 WL 2200672, *5 (E.D. Tex. Apr. 28, 2012), *report and recommendation adopted*, 2011 WL 2183844 (E.D. Tex. June 6, 2011); *Allen v. Chase Home Fin., LLC*, No. 3:10-cv-1058, 2011 WL 2683192, *4 (E.D. Tex. July 26, 2011), *report and recommendation adopted*, 2011 WL 2690576 (E.D. Tex. July 11, 2011); *Bittinger v. Wells Fargo Bank*, *N.A.*, 744 F. Supp. 2d 619, 625-26 (S.D. Tex. 2010); *Pagosa Oil and Gas, LLC v. Marrs and Smith P'ship*, No. 08-07-00090, 2010 WL 450910, *4-5 (Tex. App.--El Paso Feb. 10, 2010, pet. denied); *Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, No. 10-11589, 2010 WL 1956867, *9 (E.D. Mich. May 13, 2010)("[F]or over a century, state and federal courts around the country have [held] that a litigant who is not a party to an assignment lacks standing to challenge that assignment.")(*citing Ifert v. Miller*, 138 B.R. 159 (Bankr.

-24-

E.D. Pa. 1992)(applying Texas law)), *aff'd*, 399 Fed. Appx. 97 (6th Cir. Oct. 10, 2010), *cert. denied*, 131 S. Ct. 1969 (2011). "[A] borrower may not challenge the validity of assignments to which it was not a party or third-party beneficiary." *Livonia*, 2010 WL 1956867, at *10. *See also Eskridge v. Fed. Home Loan Mortg. Corp.*, No. 6:10-CV-00285-WSS, 2011 WL 2163989, *5 (W.D. Tex. Feb. 24, 2011)

The same principle vitiates Herrera's challenge that Wells Fargo violated the rules and regulations of the PSA in securitizing his mortgage. *Metcalf v. Deutsche Bank Nat'l Trust Co.*, Civ. A. No. 3:11-CV-3014-D, 2012 WL 2399369, *4 (N.D. Tex. June 26, 2012)(and cases cited therein); *Bittinger v. Wells Fargo Bank, N.A.*, 744 F. Supp. 2d 619, 625-26 (S.D. Tex. 2010)(holding that plaintiffs "ha[ve] no ability under Texas law to sue for breach of [the PSA]" because they "[were] not a party to this agreement and did not become a party, agent, or assignee of a party, or a third-party beneficiary of the agreement."); *Summers*, 2012 WL 5944943 at *6-7, *citing In re Walker*, 466 B.R. 271, 285 nn. 28-29 (Bankr. E.D. Pa. 2012)(collecting cases and noting that "[A] judicial consensus has developed holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a pooling and servicing agreement, when the borrower is neither a party to nor a third party beneficiary of the

securitization agreement.").

Fourth, Plaintiff's suit to quiet title fails.  A suit to quiet title is an equitable action whose traditional purpose is to remove a cloud from the title of a property created by an invalid claim.  *Islamic Ass'n of DeSoto, Texas, Inc. v. Mortgage Electronic Registration Systems, Inc.*, Civ. A. No. 3:12cv0613-D, 2012 WL 169229, *6 (N.D. Tex. Jan. 16, 2013)(citations omitted).  Plaintiff bears the burden of proving "as a matter of law, right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove."  *Hahn v. Love*, 321 S.W. 3d 517, 531 (Tex. App.–Houston [1st Dist.] 2009).  Here Herrera does not allege facts that establish his superior title.  He does not deny that he fell behind in his mortgage payments and defaulted on the note.  The gravamen of his argument that Wells Fargo lacks authority to enforce the Note and foreclose on the property is not relevant to nor does it support a claim to quiet title.  *Summers v. PennyMac Corp.*, Civ. A. No. 3:12-CV-01235-L, 2012 WL 5944943 at *3 (N.D. Tex. Nov. 28, 2012).  Thus he fails to state a claim to quiet title.

Fifth Herrera claims that Wells Fargo is not entitled foreclose on his property because there was no recording of the assignment of the Deed of Trust in county records.  As explained by the Court in *Bittinger v. Wells Fargo Bank, N.A.*, 744 F. Supp. 2d

619, 625 (S.D. Tex. 2010), *citing JWD, Inc. v. Fed. Ins. Co.*, 806 S.W. 2d 327, 329-30 (Tex. App.--Austin 1991, no writ)(and cases cited therein),

> Under Texas law there is no requirement that the deed of trust assignment be recorded.   Under Texas law, the ability to foreclose on a deed of trust is transferred when the note is transferred, not when an assignment of deed of trust is either prepared or recorded.   The failure to record the deed of trust in the real property records of Harris County when the loan was originally made, or to record the assignment of the deed of trust when it was executed, and the foreclosure before the assignment was recorded, do not as a matter of law give rise to a wrongful foreclosure claim.

*See also Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2012 WL 2864751, *4 (N.D. Tex. June 12, 1012)("Texas courts have consistently held that recordation is not necessary for liens, deeds, or deeds of trust to be enforceable against parties to those instruments"); *Broyles v. Chase Home Finance*, Civ. A. No. 3:10-CV-2256-G, 2011 WL 1428904, *2 (N.D. Tex. Apr. 13, 2011)("Section 13.001[b] of the Property Code makes clear that an 'unrecorded instrument is binding on a party to the instrument.'  . . . Texas courts have consistently held that recordation is not necessary for liens, deeds, or deeds of trust to be enforceable against the parties to those instruments."); *Munoz v. HSBC Bank USA, N.A.*, Civ. A. No. H-12-0894, 2012 WL 265982, *7 (S.D. Tex. Jan. 22, 2012).

Nest, failing to provide required disclosures set out in 15 U.S.C. § 1638(a) when concluding a credit transaction is a violation of TILA.   In the course of the Verified Complaint

Plaintiff references several TILA-related regulations, without more:  12 C.F.R. part 226 for "a servicer do not have the rights of a lender [*sic*]"; 12 C.F.R. part 226(a)1 for "A servicer of a promissory note does not have the rights of a holder-in-due-course and is not a real and beneficial party of interest."  He contends that Wells Fargo lacks standing to enforce the negotiable instrument because it is not the real party in interest since it sold its interest to the REMIC.

The pleading does not appear to this Court to cite a cognizable claim under TILA.  Herrera does not allege that the lender concealed anything from him.  He does not identify any specific nondisclosure of terms of the loan that were concealed by the lender.  Even if he had, where the doctrine of fraudulent concealment may apply, the Fifth Circuit has held that nondisclosure of required information by itself does not offer sufficient grounds for tolling the statute of limitations.  *Moor*, 784 F.2d at 633 ("To clothe himself in the protective garb of the tolling doctrine, a plaintiff must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct.").

Wells Fargo challenges this purported TILA claim on statute of limitations grounds.  Title 15 U.S.C. § 1640(e) provides, "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction,

within one year from the date of the occurrence of the violation." A violation occurs when the transaction, here presumably the loan between Herrera and the original lender, was consummated. *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 186 (S.D. Tex. 2007), *citing In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984). "'Nondisclosure is not a continuing violation for purposes of the statute of limitations.'" *Id., citing id.* Herrera entered into a contractual agreement with Security National Mortgage Company on May 25, 2006. Verified Complaint, Addendum II at p. 1. He did not file this suit until December 13, 2012, more than six years later and well beyond the one-year statute of limitations under 15 U.S.C. § 1640(e). Wells Fargo points out that Herrera has not alleged any "rare and exceptional circumstances" that would support a claim for equitable tolling or the discovery rule.[20]  The Court agrees that the TILA claim is time-barred.

Plaintiff's claim under RESPA, 12 U.S.C. § 2601, *et seq.*, appears to be that Wells Fargo failed to respond to his requests

---

[20] The Court notes that as a matter of law Herrera cannot obtain rescission because there is no federal right of rescission under TILA after three years after the date of the consummation of the transaction "not withstanding the fact that the information forms required under [§ 1635(s)] or any other disclosures . . . have not been delivered to the obligor."  15 U.S.C. § 1635(f). Section 1635(f) "absolutely bars rescission claims more than three years after the loan transaction is consummated." *Fantroy v. First Financial Bank, N.A.*, Civ. A. No. 3:12-CV-0082-N, 2012 WL 67645551, *3 (N.D. Tex. 2012), *citing Renfrow v. CTX Mortg. Co., LLC*, No. 3:11-CV-3132-L, 2012 WL 3582752, *5 (N.D. Tex. Aug. 20, 2011)(collecting cases).

for information and he was not notified of the transfer(s) of his loan, ultimately to Wells Fargo, and therefore Wells Fargo lacks legal authority to foreclose.  Section 2605(c)(1) provides, "Each transferee servicer to whom the servicing of any federally related mortgage is assigned, sold, or transferred shall notify the borrower of any such assignment, sale or transfer."

Plaintiff must allege actual damages arising from the violation of the statute under 2605(f)(1)(A).  *Bassie v. Bank of America, N.A.*, Civ. A. No. 4:12-CV-0891, 2012 WL 6530482, *5-6 (S.D. Tex. Dec. 13, 2012), *citing Denley v. Vericrest Financial, Inc.*, Civ. A. No. H-12-992, 2012 WL 2368325, *4 (S.D. Tex. June 21, 2012).  Moreover those damages must have been caused by Wells Fargo's alleged failure to have responded to his QWRs' requests for information or notify him of any transfers of the loan under §§ 2605(e)(1)(B) and 2605(c).  *Collier v. Wells Fargo Home Mtg.*, 2006 WL 1464170, *10-11 (N.D. Tex. May 26, 2006)("Plaintiffs have alleged no damages which were caused by Defendant's failure to response or inadequate response to the RESPA request, and thus have failed to sufficiently allege violation of section 2605(e) of RESPA."); *Renfrow*,, 2012 WL 3582752, *8(same, but allowing Plaintiffs to amend to clarify and set forth their claims for damages under RESPA).  Alternatively under  12 U.S.C. § 2605(f)(1)(B) the court may award statutory damages for a violation of RESPA where the plaintiff shows a pattern or practice of

noncompliance by the servicer. *Cavil v. Trendmaker Homes, Inc.*,
2012 WL 170751, *2 (S.D. Tex. January, 192012). Herrera has not
pleaded facts showing that he suffered actual damages that were
caused by Wells Fargo's failure to respond, as required under §
2605(f)(1)(A). Nor has he pleaded a pattern of or practice of
noncompliance with § 2605(f)(1)(B). Again the plaintiff must
allege actual damages or a pattern or practice of noncompliance to
support a claim for statutory damages, but fails to do so. 12
U.S.C. § 2605(f).

Plaintiff does have standing to challenge Wells Fargo's
authority to foreclose if the foreclosure did not comply with the
terms of the Deed of Trust because such a challenge would be based
on the terms of the Deed of Trust that he, himself, executed and
Wells Fargo derives its authority to foreclose from the power of
sale in that document. *Metcalf*, 2012 WL 2399369, at *5, *citing
Univ. Sav. Ass'n v. Springwoods Shopping Center*, 644 S.W. 2d 705,
706 (Tex. 1982). Texas law provides that a deed of trust is a
mortgage with a power to sell under default. *McDonald v. Deutsche
Bank Nat. Trust Co.*, 2012 WL 2122168, *4 (N.D. Tex. 2012), *citing
DeFranceschi v. Wells Fargo Bank, N.A.*, No. 4-10-cv-455-Y, 2011 WL
3875338, *4 (N.D. Tex. Aug. 31, 2011)("A mortgage created by a deed
of trust is an interest created by a written instrument providing
security for payment. The security is established by a note.
Because the deed of trust or mortgage has no legal effect apart

-31-

from the debt or obligation, any transfer of the deed of trust without the note automatically passes the debt.")(citations omitted).  Here the Promissory Note was executed in favor of the original lender, while the Deed of Trust named MERS as the nominal beneficiary of the original lender or its successors and assigns. Under the Texas Property Code, a mortgagee may authorize a mortgage servicer to service a mortgage and conduct a foreclosure sale. Tex. Prop. Code Ann. § 51.0025.  MERS as a book entry system is a mortgagee under Texas law. *Id.* at § 51.0001(4)(B).  As indicated, the Deed of Trust in dispute here expressly states that MERS is the beneficiary (solely as nominee for Lender and Lender's successors and assigns" and that "MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all those interests, including, but not limited to, the right to foreclose and sell the Property . . . ."  #1, Ex. 2, at p.3.  Thus under the Texas Property Code MERS is a mortgagee and has the authority to transfer the right to foreclose to a loan servicer, such as Wells Fargo, without producing the original Note or Deed of Trust." *McDonald v. Deutsche Bank Nat. Trust Co.*, 2012 WL 2122168, *4 (N.D. Tex. 2012); Tex. Prop. Code § 51.0025.

Accordingly, for the reasons indicated above, the Court

ORDERS that  Herrera's motion for default judgment (#12) is DENIED.  The Court further

ORDERS that Wells Fargo's motion to dismiss is GRANTED in part

and DENIED in part as follows:

(1) Plaintiff's wrongful foreclosure claim is DISMISSED without prejudice;

(2) Plaintiff's challenges to the validity of any assignments, including one to Wells Fargo, and to Wells Fargo's violation of the rules and regulations of the PSA are DISMISSED for lack of standing;

(3) Plaintiff's FDCPA claim is DISMISSED with prejudice; and

(4) Plaintiff's RESPA claims are DISMISSED without prejudice for failure to allege damages caused by Wells Fargo's failure to respond to Herrera's QWRs or to allege a pattern and practice violating the statute and facts showing that it caused damages to Plaintiff, but Plaintiff is granted leave to file an amended claim under RESPA, if he is able to do so, within twenty days of entry of this opinion and Order.  Failure to do so will result in dismissal of this case.  Finally

The Court

ORDERS that Plaintiff's motion to order a permanent injunction barring sale (#6) and motion for summary judgment (#13) DENIED as he has failed to state a claim showing that he has the right to

such relief.

     **SIGNED** at Houston, Texas, this __12th__ day of __March__ , 2013.

                                         _____

                                         MELINDA HARMON
                              UNITED STATES DISTRICT JUDGE